### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALANA PORTER | : |
|              Plaintiff, : | CIVIL ACTION |
| | : |
|     v. | :   NO. |
| | : |
| COUNTY OF DELAWARE | :   JURY TRIAL DEMANDED |
|            Defendant. | : |
| | : |

## <u>COMPLAINT – CIVIL ACTION</u>

The plaintiff, Alana Porter[1] ("Plaintiff"), by and through her undersigned counsel, brings the instant action seeking relief from the employment discrimination of the defendant, County of Delaware ("Defendant"), and makes the following allegations.

## I.      INTRODCUTION

1.      Plaintiff initiates this action to seek redress against Defendant, her former employer, for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, as amended by the Pregnancy Discrimination Act, 42 U.S.C. §2000e(k), and the Family and Medical Leave Act ("FMLA") of 1993, 29 U.S.C. §2601 *et seq.*

## II.      <u>JURISDICTION AND VENUE</u>

2.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims, because this civil action arises under a law of the United States.

---

[1] Alana Porter was known as Alana DeRosa at the time she was employed with Defendant. Alana Porter is Plaintiff's married name.

3.      Venue is proper in the United States District Court  for the Eastern District of Pennsylvania by reason of 28 U.S.C. § 1391 (b) and (c) because a substantial number of the acts and omissions that give rise to this Complaint occurred in this judicial district.

### III.    **ADMINISTRATIVE PROCEEDINGS**

4.      On August 15, 2012, Plaintiff timely filed charges of gender and pregnancy discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").

5.      After the requisite period elapsed, Plaintiff twice requested a Notice of Right to Sue letter; however, none has been received as of date.

### IV.    **PARITES**

6.      Plaintiff is a female who formerly worked at County of Delaware in Delaware County, Pennsylvania, when she was terminated due to the violations more fully described herein.

7.      Defendant, County of Delaware, is a municipality, political subdivision and/or governmental unit that, *inter alia*., operates a department responsible for overseeing Delaware County residents who are criminally adjudicated and sentenced to a term of probation.

8.      At all material times hereto, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant hereto in the course and scope of his/her employment with and for the Defendant.

### V.    **FACTUAL BACKGROUND**

9.      On March 4, 2009, Plaintiff was hired by Defendant as an adult probation officer.

2

10.     Plaintiff was supervised by Chris Pawlowski, Deputy Director, and Noelle Murtha.

11.     Throughout the course of her employment, Plaintiff performed her duties fully, diligently, competently and without issue.

12.     In March of 2011, Plaintiff notified Murtha that she was pregnant and required a leave of absence after delivery of the baby.

13.     Murtha in turn notified her supervisor, Pawlowski.

14.     Soon after becoming aware of Plaintiff's pregnancy, Pawlowski called Plaintiff to schedule a meeting to discuss alleged performance deficiencies.

15.     Pawlowski's meeting request was the first time any issues or concerns regarding Plaintiff's performance had been raised.

16.     During the meeting with Pawlowski, Plaintiff was unfairly and discriminatorily reprimanded for cases that had been closed because the records were lost in a building fire in April 2010.  Clearly the loss of these records, from a year prior, was beyond Plaintiff's control, but this was not considered.

17.     Pawlowski and Murtha threatened to formally discipline Plaintiff for the loss and closure of these cases.

18.     Due to Plaintiff's union representative, Matthew Haubrich's, intervention, Pawlowski backed down and agreed to consider the meeting a warning/ notification of Plaintiff's alleged performance deficiencies.

19.     The performance issues raised in Pawlowski's meeting were clearly bogus and pretextual.

3

20.     On or around September 12, 2011, Plaintiff formally applied for leave under the FMLA based upon the delivery due date of November 30, 2011 of Plaintiff's unborn child.

21.     Due to complications with Plaintiff's pregnancy, she was required to take leave earlier than anticipated and on October 17, 2011, she began leave under the FMLA.

22.     Plaintiff was scheduled to return to work in early January 2012.  However, prior to Plaintiff's return date, she became aware that Defendant calculated eligibility for FMLA leave on a calendar year and therefore, she was eligible to take a second FMLA leave consecutive with her first FMLA leave.

23.     Plaintiff contacted Human Resources and requested an additional eight weeks of FMLA leave.

24.     Plaintiff was thereafter scheduled to return to work on March 11, 2012.

25.     Approximately two weeks before returning to work, Plaintiff was contacted by Murtha who verified her return date and advised that all of Plaintiff's files were up-to-date.  At this time, Murtha did not indicate that there were any problems with Plaintiff's files or performance.

26.     The first day Plaintiff returned to work after exhausting her two FMLA leaves, March 12, 2012, at 4:00 p.m., Murtha presented Plaintiff with a packet of alleged performance issues ("Termination Packet").

27.     The Termination Packet included printouts of Plaintiff's Facebook page, a list of issues in 24 of her cases that occurred over a 3 year period, and copies of various forms and policies used by the department.

4

28.     Along with the Termination Packet, Murtha informed Plaintiff that she and Pawlowski would be meeting with Plaintiff to discuss these alleged performance issues the next morning ("Termination Meeting").

29.     Plaintiff immediately spoke with Haubrich who advised that he was not surprised that the meeting was scheduled because Plaintiff's coworkers had been instructed to review her cases and find any issues or concerns during Plaintiff's FMLA leave.

30.     In fact, Haubrich told Plaintiff that her coworkers were paid overtime for the time spent scouring her files while she was on FMLA leave to uncover any issues that could be used in an attempt to justify Defendant's unlawful termination.

31.     On March 13, 2012 at 9 a.m., the Termination Meeting was held and Murtha, at the request and in the presence of Pawlowski, identified and described the alleged issues in the 24 cases highlighted.  As mentioned, some of these issues dated back 3 years.  Most of these issues were minor and involved issues that were beyond Plaintiff's control.  Plaintiff attempted to offer an explanation for every alleged issue, but it fell on deaf ears.

32.     During the Termination Meeting, it became apparent that Defendant had employees examine and dissect posts on Plaintiff's Facebook page that were made while Plaintiff was on leave.  Murtha claimed that the posts violated company policy, yet admitted that she could not use the Facebook information as the sole basis for Plaintiff's termination.

33.     Murtha stated that Plaintiff was being terminated for the alleged performance deficiencies discussed during the Termination Meeting.

34.     Defendant never questioned, warned, or even notified Plaintiff regarding the alleged performance deficiencies problems prior to Plaintiff's FMLA requests until the Termination Meeting.

35.     At the conclusion of the Termination Meeting, Plaintiff was given three options: (1) resign by 4:00 p.m. that day; (2) be terminated and initiate a grievance through the Union, but Defendant would contest Plaintiff's claim for unemployment compensation benefits; or (3) be terminated and not initiate a grievance, and Defendant would not contest Plaintiff's claim for unemployment compensation benefits.

36.     Since Plaintiff had no other source of income and a newborn baby to care for, she opted to accept termination and forego her grievance rights in order to be guaranteed unemployment compensation benefits.

37.     However, despite Defendant's promises, Defendant did in fact contest Plaintiff's claim for unemployment compensation.

38.     Plaintiff was denied unemployment compensation benefits.

39.     Defendant therefore knowingly and intentionally left Plaintiff both without an opportunity to grieve and without unemployment compensation benefits.

40.     Plaintiff's gender, pregnancy and FMLA requests were determinative factors in Defendant's decision to terminate her.

41.     As a result of the Defendant's behavior, Plaintiff suffered embarrassment, emotional distress, mental anguish, humiliation, loss of self-esteem and financial hardship.

42.     Plaintiff has and is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the discriminatory and unlawful acts of Defendant unless and until this Court grants the relief requested herein.

**COUNT I**
**VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT (RETALIATION)**

43.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

44.     At all times relevant hereto, Plaintiff was an eligible employee under the FMLA, as Plaintiff was continuously employed for more than twelve months and worked at least 1,250 hours of service in the twelve months preceding the commencement of her first leave.

45.     At all times relevant hereto, Defendant was an employer as defined under the FMLA, as Defendant was engaged in an industry or activity affecting commerce which employs 50 or more employees for each working day during each of 20 or more calendar workweeks during 2011 or preceding calendar year.

46.     Plaintiff experienced a qualifying condition under the FMLA, a serious health condition, which prevented Plaintiff from working during a period of time for which she was entitled to leave under the FMLA.

47.     Plaintiff was therefore entitled to a minimum of twelve work weeks of leave under the FMLA during any twelve-month period.

48.     Plaintiff took leaves in 2011 and 2012 that were FMLA qualifying.

49.     Defendant committed violations of the FMLA by terminating Plaintiff for exercising her FMLA rights and/or for taking FMLA-qualifying leave.

50.     Defendant failed to proffer any legitimate reason for its actions.

51.     To the extent that Defendant does proffer any alleged legitimate reason for its actions, such reason would be pretextual, as Defendant had discriminatory motives based upon Plaintiff's request and need for leave from work as provided under the FMLA.

52.     Defendant's conduct constitutes willful violation of the FMLA.

53.     Plaintiff has sustained substantial damages as a result of Defendant's willful violation of the FMLA.

## COUNT II
## VIOLATION OF TITLE VI ON ACCOUNT OF GENDER

54.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

55.     Based on the foregoing, Defendant violated the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., as amended by the Pregnancy Discrimination Act, 42 U.S.C. §2000e(k), in that it created, permitted, tolerated, encouraged and fostered discriminatory treatment of Plaintiff based on her gender and pregnancy.

56.     Defendant discriminated against Plaintiff by denying her the same rights as enjoyed by similarly situated employees with respect to the terms and conditions of her employment relationship with Defendant and to the enjoyment of all benefits, privileges, terms and conditions of that relationship, in violation of Title VII.

57.     Plaintiff's pregnancy was a motivating factor in Defendant's decision to terminate her.

58.     As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has suffered mental and emotional distress, including, but not limited to,

8

sleeplessness, nervousness, headaches, hysteria and depression, as well as humiliation, ridicule, a loss of self-respect and confidence, all of which have negatively affected and have caused great damage to her career and professional standing.

59. Said violations were intentional and willful.

60. Said violations warrant the imposition of punitive damages because of Defendant's malice and reckless indifference to Plaintiff's federally protected rights.

## COUNT III
## VIOLATION OF THE PHRA ON ACCOUNT OF GENDER

61. Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

62. Defendant's  intentional discrimination against Plaintiff on the basis of her gender and pregnancy as set forth in Count II violated her rights under the Pennsylvania Human Relation Act, 43 P.S. § 955(a).

## JURY DEMAND

63. Plaintiff hereby demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court:

a. adjudge, decree and declare that Defendant has engaged in illegal and discriminatory practices that are violative of the rights secured to Plaintiff;

b. issue a permanent prohibitory injunction prohibiting Defendant and its officers, agents, employees, and successors from engaging in any further unlawful practices, policies, or customs of discrimination and retaliation complained or herein;

c. enter judgment in favor of the Plaintiff and against Defendant for all available remedies and damages under law and equity, including, but not limited to,

back pay, front pay, and past and future mental anguish and pain and suffering in amounts to be determined at trial;

      d.    order Defendant to pay punitive damages to the Plaintiff in amounts to be at trial;

      e.    order the payment of attorneys' fees and costs associated with the filing and prosecution of this action;

      f.    grant such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

**TUCKER LAW GROUP, LLC**

Dated: March 11, 2014

By:  /s/Kathleen Kirkpatrick
Yvonne Barnes Montgomery, Esquire
Kathleen Kirkpatrick, Esquire
1617 JFK Boulevard, Suite 1700
Philadelphia, PA  19103
(215) 875-0609

Attorneys for Plaintiff

10